Filed 9/20/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HM DG, INC., et al., | B242540 |
|     Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC475302) |
|     v. | |
| FARZAD ETEMAD AMINI AND POUNEH BEIZAI, Individually and as Trustees, etc., | |
|     Defendants and Appellants | |

Appeal from an order of the Superior Court of Los Angeles County, Charles F. Palmer, Judge.  Reversed with directions.

Leo A. Schwarz for Defendants and Appellants.

Law Offices of James J. Hevener and James J. Hevener for Plaintiffs and Respondents.

_____

**INTRODUCTION**

Plaintiffs and Respondents HM DG, Inc. and Hassan Majd doing business as Majd Design Group (HMDG) sued Defendants and Appellants Farzad Etemad Amini and Pouneh Beizai (Defendants) in the superior court to recover allegedly unpaid progress payments under a construction contract for a high-end remodel of Defendants' home. After HMDG refused Defendants' demand to submit the dispute to arbitration, Defendants filed a petition to compel arbitration pursuant to an arbitration clause in the parties' contract. The trial court denied the petition, holding that Defendants failed to establish the existence of a valid arbitration agreement on the ground that the "arbitration clause at issue is uncertain in that it does not specify before what agency o[r] person the matter will be arbitrated, [or] how the arbitrator will be selected, but merely sets for[th] alternative options for these terms." The trial court also awarded HMDG its attorneys fees incurred in opposing the petition to compel arbitration. We reverse.

Code of Civil Procedure section 1281.6[1] specifically contemplates the existence of an enforceable arbitration agreement even where the "arbitration agreement does not provide a method for appointing an arbitrator . . . ." The statute further provides that "[i]n the absence of an agreed method, or if the agreed method fails . . . , the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." (*Ibid*.) As we shall explain, because the court has the power to appoint an arbitrator under section 1281.6 when the parties fail to agree upon a method for appointment, we conclude that neither the absence of a definite method, nor the presence of "alternative options," for appointing an arbitrator renders an otherwise valid arbitration agreement unenforceable.

As we find the agreement to arbitrate is valid, and that Defendants demanded arbitration in accordance with the subject arbitration clause, we will reverse the trial court's order. However, because the trial court did not reach the question of whether any

---

[1]     Unless otherwise specified, statutory references are to the Code of Civil Procedure.

other ground for denying the petition under section 1281.2 applies, we will remand the matter for the trial court to consider this issue.

## FACTUAL SUMMARY

In early 2010, Defendants, husband and wife, approached HMDG about remodeling their home. After discussions regarding the project parameters, HMDG presented Defendants with a three page "Project Proposal & Agreement" (Agreement).

A clause entitled "Arbitration Clause" located directly above the Agreement's signature line provides:

> "*In the event a dispute shall arise between the parties to this contract, it is hereby agreed that the dispute shall be referred to [one of the following choices: (1) designate a specific USA&M office or alternate service by agreement of the parties; (2) provide a method of selecting the arbitrator and suits of the hearing, such as 'from the county wherein the manufacturing plant is located'; or for multi-jurisdictional disputes (3) insert 'a USA&M office to be designated by USA&M National Headquarters'] for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration. The arbitrator's decision shall be final and legally binding and judgment may be entered thereon.*
>
> "*Each party shall be responsible for its share of the arbitration fees in accordance with the applicable Rules of Arbitration. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.*"[2]  (Bracketed text and italics in original.)

---

[2]    "USA&M" is an acronym for United States Arbitration and Mediation.  The clause's reference to "**suits** of the hearing" is an apparent typographical error.  The parties agree that the clause should read "**situs** of the hearing."

3

After reviewing the Agreement, which was prepared by HMDG, Defendants executed the Agreement without requesting any changes to the Arbitration Clause. Mr. Majd executed the Agreement on behalf of HMDG.

In mid-2011, a dispute arose between HMDG and Defendants regarding the quality of the remodeling work, Defendants' requests to make substantial changes to the project's scope, and Defendants' alleged failure to make prompt progress payments as required by the Agreement. On July 9, 2011, HMDG made a proposal to resolve the dispute by having Defendants place funds sufficient to complete the remaining project items into an escrow account. Although HMDG's proposal contained numerous references to arbitration, no formal demand for arbitration was made. When Defendants refused the proposal, HMDG served a 10-day stop work order and recorded a mechanic's lien on the property.

On December 15, 2011, HMDG filed a complaint against Defendants in the superior court, asserting claims for breach of contract, a common count for money due under the contract, foreclosure of mechanics lien, unjust enrichment, and violation of the prompt payment statute—Civil Code section 3260.1.

On February 21, 2012, Defendants' counsel, Leo A. Schwarz, sent a letter to counsel for HMDG, James J. Hevener. Mr. Schwarz's letter reads, in pertinent part:

> "Please accept this letter as defendants' demand that all of the claims raised by plaintiffs in their complaint in the Action, as well as the claims to be made by defendants, be arbitrated per the 'Arbitration Clause' found on Page 3 of the June 24, 2010 'Project Proposal and Agreement'. As USA&M, one of the designated potential arbitration providers, does not have a presence in Los Angeles County or the State of California, we propose that the parties avail themselves to Option No. 2 of the Arbitration Clause, where a method of selecting the arbitrator is provided. Defendants propose that: (1) the matter be heard by a retired judge with substantial construction and home improvement contract experience; (2) each party select two neutral such judges, with each party allowed to strike one of the

4

other party's selections; (3) the arbitrator is then randomly selected from the remaining two judges; (4) the California arbitration rules (C.C.P. [§] 1281 et seq.) be adopted as the rules of arbitration; (5) the terms set forth in the second paragraph of the Arbitration Clause remain in effect; and (6) the Action will be stayed pending the Arbitrator's award, however, defendants' right to seek expungement of the mechanic's lien prior to the arbitration hearing shall not be stayed." (Underscoring omitted.)

The next day, February 22, 2012, Mr. Hevener wrote back to Mr. Schwarz that HMDG found "[the] proposal unreasonable and not required by the Project Proposal and Agreement." Mr. Hevener's letter continued: "Please proceed with filing your responsive pleading today. [¶] My client remains open to discussing settlement of this dispute including a reasonable process for alternative dispute resolution."

On February 22, 2012, Defendants filed a petition to compel arbitration pursuant to the Agreement's Arbitration Clause. The petition was supported by Defendants' declarations and a declaration by their attorney, attaching the Agreement, Mr. Schwarz's letter demanding arbitration, and Mr. Hevener's response.

On June 13, 2012, after a hearing on Defendants' petition, the trial court issued an order denying the petition and awarding HMDG attorney fees in the amount of $2,430. In pertinent part, the court's order states: "[D]efendants have failed to meet their burden of proving the existence of a valid arbitration agreement. Specifically, the arbitration clause at issue is uncertain in that it does not specify before what agency o[r] person the matter will be arbitrated, [or] how the arbitrator will be selected, but merely sets for[th] alternative options for these terms. At most the agreement provides that these questions are to be resolved in the future which . . . 'gives rise to no legal obligation until such future agreement.['] Moreover, defendants' demand for arbitration itself reflects that there was a lack of mutual consent insofar as it proposes terms nowhere set forth in the putative arbitration agreement." The trial court's order states no other ground for denying Defendants' petition.

5

**ISSUES PRESENTED**

In this appeal, we must decide whether the subject Arbitration Clause constitutes a valid arbitration agreement, notwithstanding the presence of multiple alternative methods for selecting an arbitrator in the clause. We also will address HMDG's contention that the presence of these alternatives in the Arbitration Clause establishes that there was no mutual consent to arbitrate. Finally, we will address HMDG's contention that Defendants' demand for arbitration was defective because it included proposals that did not strictly conform to the terms of the Arbitration Clause.

Based on a plain reading of section 1281.6, we conclude that the Arbitration Clause is both valid and establishes the parties' mutual consent to arbitrate, notwithstanding the clause's various options for selecting an arbitrator. We also conclude that Defendants' demand for arbitration was consistent with the terms of the Arbitration Clause. Accordingly, we will reverse the order denying Defendant's petition. However, because the trial court did not reach other potential grounds for denying the petition under section 1281.2, we will remand the matter for the court to consider these issues.

**DISCUSSION**

A.     *Section 1281.6 Makes Clear that the Parties Need Not Agree Upon a Specific Method for Appointing an Arbitrator to Form a Binding Arbitration Agreement*

In denying Defendants' petition to compel arbitration, the trial court determined that the Arbitration Clause was not "a valid arbitration agreement" because the clause "does not specify before what agency o[r] person the matter will be arbitrated, [or] how the arbitrator will be selected, but merely sets for[th] alternative options for these terms." The court's conclusion assumes the premise that an arbitration agreement must identify a specific arbitrator or specify a single method for selecting an arbitrator in order to be valid. That premise, as we shall explain, is contrary to a plain reading of section 1281.6 and, thus, cannot support the trial court's denial of Defendants' petition to compel arbitration.

6

As our resolution of this issue rests on the interpretation of a statute and the application of that statute to undisputed facts—in this case, section 1281.6 and the terms of the written Arbitration Clause—the issue is subject to this court's independent or de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611; *City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 2012.)

We begin with the well-settled canons of statutory construction. "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910–911 (*Estate of Griswold*), quoting *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

Section 1281.6 states: "If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed. If the arbitration agreement *does not provide a method for appointing an arbitrator*, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. *In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed*, or when an arbitrator appointed fails to act and his or her successor has not been appointed, *the court*, on petition of a party to the arbitration agreement, *shall appoint the arbitrator*." (Italics added.)

A plain reading of section 1281.6 yields only one reasonable interpretation—that the validity of an arbitration agreement is not contingent upon the agreement identifying a specific arbitrator or specifying a particular method for appointing an arbitrator. Moreover, if an arbitration agreement that "does not provide a method for appointing an arbitrator" is valid [§ 1281.6], then it follows that an agreement which provides multiple alternative methods for appointing an arbitrator also is valid, even though it does not

7

specify a particular method for appointment. Indeed, even where the parties are unable to agree upon a specific method for appointing an arbitrator, section 1281.6 provides a solution to ensure a party's contractual right to arbitrate is enforced. In such instances, section 1281.6 provides that "the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator."

Consistent with our plain reading of section 1281.6, we hold that the presence of multiple alternative methods for selecting an arbitrator in the Arbitration Clause does not render the clause invalid or unenforceable.[3] The trial court erred in finding that Defendants failed to meet their burden of establishing the existence of a valid arbitration agreement.

B. *The Arbitration Clause Establishes the Parties' Mutual Consent to Arbitrate*

HMDG contends that the presence of "options for key terms such as selection of the specific Office of USA&M [that] would administer the arbitration and provide the associated arbitration rules, how the arbitrator would be selected, and the location for the arbitration hearing" demonstrates that there was "no meeting of the minds" or mutual

---

[3] We hold this interpretation follows from a plain reading of section 1281.6. But even were we to view the statutory language as ambiguous with respect to an arbitration agreement that provides numerous options for appointing an arbitrator, we would reach the same conclusion. Where statutory language is susceptible of more than one possible interpretation, "we ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]" (*Estate of Griswold*, *supra*, 25 Cal.4th at p. 911.) Section 1281.6 is part of a "detailed statutory scheme," through which "the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) The statute plainly contemplates a valid and enforceable arbitration agreement, even where the parties have failed to specify a method for appointing an arbitrator. Given the strong public policy favoring arbitration, it would be an absurd consequence to hold that an agreement that provides no method for appointing an arbitrator is valid, while an agreement that provides multiple alternative methods for appointing an arbitrator is invalid.

8

consent to arbitrate. We disagree. Contrary to HMDG's contention, the plain language of the Arbitration Clause, combined with the parties' signatures directly under the clause, establishes the parties' mutual consent to submit their disputes to "arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration" and to be bound by the "arbitrator's decision."~(CT 38)~ The presence of options regarding the method for selecting an arbitrator or the location of the arbitration hearing do not negate that clear intention.

"Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.' " (*Bustamante v. Intuit, Inc*. (2006) 141 Cal.App.4th 199, 208 (*Bustamante*), quoting Civ. Code, § 1580; see also Civ. Code, §§ 1550, 1565.) " 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' [Citations.]" (*Bustamante*, at p. 208.) "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." (*Ibid.*; *Robinson & Wilson, Inc. v. Stone* (1973) 35 Cal.App.3d 396, 407 ["the question whether the contract . . . is sufficiently definite and certain in its essential terms to give rise to a legal obligation is a question of law"].) Because HMDG's contention rests on the language of the Arbitration Clause, and the presence of "options for key terms" in the clause, we review the issue as a question of law, without deference to purported factual determinations made by the trial court.[4]

---

[4] The trial court stated in its order that "defendants' demand for arbitration itself reflects that there was a lack of mutual consent insofar as it proposes terms nowhere set forth in the putative arbitration agreement." HMDG contends this was a "key factual determination[ ]" and urges us to review the question of mutual consent under the substantial evidence standard. As we have explained, because the trial court's purported factual determination is, like HMDG's mutual consent argument, based entirely upon the terms of the Arbitration Clause, the issue is subject to our independent review.

9

HMDG's contention regarding the purported lack of mutual consent is largely disposed of by our earlier analysis of section 1281.6. As explained, section 1281.6 makes clear that the absence of a specified method for appointing an arbitrator neither invalidates an arbitration agreement nor negates the parties' clearly expressed intent to submit their disputes to arbitration. Accordingly, HMDG's argument that mutual consent is lacking because the Arbitration Clause did not specify "the specific Office of USA&M [that] would administer the arbitration" or "how the arbitrator would be selected" is without merit.

For much the same reason, we are not persuaded by HMDG's contentions regarding the purported options related to the "associated arbitration rules" and "the location of the arbitration hearing." We view these matters as part and parcel with the appointment of an arbitrator—that is, for example, if the parties were to elect to appoint an American Arbitration Association (AAA) arbitrator, that appointment would entail arbitration in a AAA forum under AAA rules. Thus, under section 1281.6, the absence of a specified forum or set of rules in an arbitration clause does not invalidate the agreement to arbitrate. Rather, in the absence of such provisions, "the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator"—including the forum and rules that will govern the arbitration—or, if the parties cannot agree, "the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." (§ 1281.6.)

HMDG contends that "arbitration rules and forum are material terms of an agreement to arbitrate" and, thus, must be specified in the agreement to establish mutual consent. This contention goes too far and is not supported by the authorities cited by HMDG. On the contrary, the authorities HMDG cites implicitly recognize the conclusion we reach.

10

In support of its contention, HMDG cites *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 121 (*Martinez*) for the proposition that " ' "[a]n agreement to arbitrate before a particular forum is as integral a term of a contract as any other, which courts must enforce." ' [Citations.]" The arbitration clause in *Martinez* "require[d] that the arbitration be conducted in accordance with specific procedures promulgated by the AAA . . . ." (*Id.* at p. 120.) The plaintiff "submitted his claims to the AAA, but [AAA] refused to conduct a hearing." (*Ibid.*) The trial court nevertheless ordered the parties to arbitrate, and "appointed another arbitrator" pursuant to section 1281.6. (*Martinez,* at p. 120.) The *Martinez* court reversed. As the court correctly concluded, "[s]ection 1281.6 does not permit the trial court to choose an alternative forum when the chosen forum refuses to hear the case." (*Id.* at p. 121.) That conclusion follows from the plain language of section 1281.6: "If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed." But this does not mean, as HMDG contends, that section 1281.6 is inapplicable where the parties have provided a list of alternative methods for selecting an arbitrator and forum. Indeed, *Martinez* implicitly recognizes, as we do, that the selection of an arbitral forum is part and parcel with the appointment of an arbitrator. (See *Martinez*, at p. 120 [rejecting contention that trial court properly appointed a non-AAA arbitrator with the proviso that AAA rules be followed on ground that the "requirement for resolution of the present dispute 'in accordance with' pertinent AAA procedures means that the arbitration must take place before that designated agency, that is, in an AAA forum" before an AAA arbitrator].)

*Alan v. Superior Court* (2003) 111 Cal.App.4th 217 (*Alan*), like *Martinez*, recognizes that a court cannot invoke section 1281.6 to make an appointment that is inconsistent with the forum and set of rules required by the parties' agreement. The arbitration clause at issue in *Alan* provided: " '[A]ny arbitration … shall be conducted before an arbitration panel convened by the [NYSE] or the [NASD]. . . . Such arbitration shall be governed by the *rules of the organization* convening the panel.' " (*Alan,* at p. 224, italics added by *Alan*.) Because it viewed the designated arbitral forums and rules to be "an integral part" of the parties' agreement to arbitrate, the *Alan* court rejected the

argument that a court could simply appoint another arbitrator under section 1281.6 when the designated organizations refused to hear the dispute. (*Alan*, at p. 224.) However, the court did not hold, as HMDG contends, that the presence of choices regarding the forum and rules—i.e., " 'an arbitration panel convened by the [NYSE] or the [NASD]' " and " 'governed by the *rules of the organization* convening the panel' "—invalidated the agreement.

Here, notwithstanding the presence of options for selecting an arbitrator, the arbitration forum and the USA&M rules to be applied, a plain reading of the Arbitration Clause clearly evidences the parties' intention to submit their disputes to arbitration. The Arbitration Clause unequivocally states: "In the event a dispute shall arise between the parties to this contract, it is hereby agreed that the dispute shall be referred to [one of three choices for appointing an arbitrator] . . . for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration. The arbitrator's decision shall be final and legally binding and judgment may be entered thereon." (Bracketed text added, italics omitted.) No more was required to form a binding agreement to arbitrate. (See *Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 687-688 ["although arbitration can take many procedural forms, a dispute resolution procedure is not an arbitration unless there is a third party decision maker, a final and binding decision, and a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision"].)

C.      *Defendants Properly Demanded Arbitration in Accordance with the Arbitration Clause and Section 1281.2*

Subject to exceptions that are not properly before us,[5] section 1281.2 provides that: "On petition of a party to an arbitration agreement alleging the existence of a

---

[5]      Notwithstanding the existence of an agreement to arbitrate, section 1281.2, subdivision (c) authorizes the trial court to refuse to enforce the arbitration agreement or stay the arbitration proceeding "[i]f the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) . . . ." In its opposition to Defendants' petition to compel arbitration, HMDG argued that the petition should be denied under

12

written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." The statute does not explicitly require the petitioning party to establish that a proper demand for arbitration was made. Nevertheless, a "necessary implication" of the language requiring " 'the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy' . . . is that a request or demand for arbitration *under the written agreement to arbitrate* has been made and refused." (*Mansouri v. Superior Court* (2010) 181 Cal.App.4th 633, 641, italics added (*Mansouri*), quoting § 1281.2.)

Having determined that Defendants established the existence of a valid arbitration agreement, we turn to HMDG's contention that Defendants failed to make a proper demand for arbitration. HMDG contends that the February 21, 2012 letter from Defendants' attorney did not meet the standard articulated in *Mansouri* because the letter included proposed "terms to which [HMDG] had not agreed." As HMDG's contention turns upon undisputed evidence—i.e., the contents of the February 21, 2012 letter and the written Arbitration Clause—we review the issue de novo. (*Mooney v. County of Orange* (2013) 212 Cal.App.4th 865, 872.)

---

subdivision (c) because HMDG had filed a cross-complaint in a related superior court action filed by one of its subcontractors concerning work performed on Defendants' home. Because the trial court found that Defendants failed to establish the existence of a valid arbitration agreement, the court did not reach this issue. Accordingly, we will remand this matter for the trial court to consider the application of subdivision (c), which may require the court to make factual determinations and exercise its discretion in accordance with section 1281.2. The trial court also may consider other statutory defenses raised by HMDG, such as waiver under section 1281.2, subdivision (a). (See *Rosenthal v. Great Western Fin. Securities Corp*. (1996) 14 Cal.4th 394, 413.)

13

We conclude the February 21, 2012 letter was a demand "pursuant to and under the terms of [the parties'] written arbitration agreement" as required by section 1281.2. (*Mansouri, supra,* 181 Cal.App.4th at p. 641, italics omitted.)  The letter states, in no uncertain terms:  "Please accept this letter as defendants' demand that all of the claims raised by plaintiffs in their complaint in the Action, as well as the claims to be made by defendants, be arbitrated per the 'Arbitration Clause' found on Page 3 of the June 24, 2010 'Project Proposal and Agreement'."

In arguing that the letter improperly demanded arbitration in variance with the parties' agreement, HMDG focuses on the letter's next two sentences, in which Defendants "propose that the parties avail themselves to Option No. 2 of the Arbitration Clause" and "propose" six additional points concerning the arbitration and pending civil action.  While it is true, as HMDG contends, that two of the proposed points did not "strictly [track] the parties' actual agreement," this does not undermine the operative demand for arbitration.[6]  Those points were, as Defendants labeled them, "proposals," and HMDG was invited to negotiate those points consistent with "Option No. 2 of the Arbitration Clause."[7]  The operative demand, however, offered no room for negotiation— it made specific reference to the Arbitration Clause and demanded that the claims be submitted to arbitration pursuant to "the 'Arbitration Clause' found on Page 3 of the June 24, 2010 'Project Proposal and Agreement'."

---

[6]  As quoted in the factual summary, most of Defendants' proposed points concerned the method for selecting an arbitrator.  Defendants, however, also proposed that "the California arbitration rules (C.C.P. [§] 1281 et seq.) be adopted as the rules of arbitration"—a proposal that does not strictly track the Arbitration Clause's requirement "*for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration*."  Defendants also proposed that the court action be stayed pending the arbitrator's award, except with respect to Defendants' "right to seek expungement of the mechanic's lien."  Because the Arbitration Clause does not contemplate that there will be a court action, it naturally makes no provision for the trial court to retain some aspect of a case that is sent to arbitration.

[7]  As set forth in the factual summary, Option No. 2 of the Arbitration Clause states that the parties may "*provide a method of selecting the arbitrator and [situs] of the hearing . . . .*"

14

This clear invocation of the Arbitration Clause, coupled with the negotiable nature of the proposed terms, distinguishes Defendants' demand for arbitration from the demand that the court found to be defective in *Mansouri, supra,* 181 Cal.App.4th 633. In *Mansouri*, the plaintiff and defendant entered into an arbitration agreement providing for arbitration before a three-person panel. (*Id.* at p. 637.) Prior to filing a petition to compel arbitration, the plaintiff wrote a letter to defendant demanding that she agree to submit to "binding arbitration before a single arbitrator, unilaterally preselected by the [plaintiff]." (*Ibid.*) "The letter indicated that if [defendant] did not agree, the [plaintiff] would file 'a court action for injunctive and declaratory relief and attorneys fees to enforce [her] compliance.' " (Italics omitted.) The *Mansouri* court held that the plaintiff "failed to show it requested that [defendant] arbitrate pursuant to and under the terms of [their written arbitration agreement]" as required by section 1281.2. (*Id.* at p. 642.) The court based its conclusion on the following defects in the purported demand for arbitration: "The letter made no reference to the arbitration provision of the [parties' agreement], did not offer the three-person form of arbitration set forth in [the arbitration provision], and did not inform [defendant] that a petition to compel arbitration would be filed if she refused." (*Id.* at p. 637.)

Unlike the demand in *Mansouri*, Defendants' February 21, 2012 letter (1) demanded arbitration pursuant to "the 'Arbitration Clause' found on Page 3 of the June 24, 2010 'Project Proposal and Agreement' "; (2) proposed "that the parties avail themselves to Option No. 2 of the Arbitration Clause" for selecting an arbitrator; and (3) advised that Defendants would "file [a] motion to compel arbitration" if HMDG rejected the demand to arbitrate. HMDG rejected the demand and instructed Defendants to "proceed with filing your responsive pleading . . . ." There was a "demand for arbitration under the parties' arbitration agreement and a refusal to arbitrate under the agreement." (*Mansouri*, *supra*, 181 Cal.App.4th at p. 640.)

15

Finally, insofar as HMDG refused to negotiate a method for selecting an arbitrator pursuant to one of the options set forth in the Arbitration Clause, we observe that the trial court was authorized to appoint an arbitrator pursuant to section 1281.6. As discussed, section 1281.6 provides that "[i]n the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, . . . the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." That appointment must be made in a manner consistent with one of the options set forth in the Arbitration Clause. (*Ibid.* ["If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed."].) However, because Option No. 2 allows for essentially any "method of selecting the arbitrator and [situs] of the hearing," this is not a case in which appointing an arbitrator in a manner consistent with the parties' agreement would be impossible if the parties are ultimately unable to agree upon a method.[8]

Defendants met their burden under section 1281.2 of showing a valid written agreement to arbitrate a controversy; a demand to arbitrate such controversy pursuant to and under the terms of the written arbitration agreement; and the refusal to arbitrate such controversy pursuant to and under the terms of the written arbitration agreement. (*Mansouri*, *supra*, 181 Cal.App.4th at p. 641.) Accordingly, we will reverse the order denying Defendants' petition to compel arbitration and remand the matter for the trial court to consider whether any defense or exception under section 1281.2 applies.

---

[8] The instant case is thus different from *Alan*, *supra*, 111 Cal.App.4th 217 and *Martinez*, *supra*, 118 Cal.App.4th 107 where the appellate courts held that section 1281.6 did not authorize the trial courts to appoint an arbitrator in a manner inconsistent with the parties' arbitration agreements. As discussed above, in both *Alan* and *Martinez*, the parties' agreements identified specific arbitration service providers that were to arbitrate their disputes. (See *Alan*, at p. 224 [" '[A]ny arbitration . . . shall be conducted before an arbitration panel convened by the [NYSE] or the [NASD]' "]; *Martinez*, at p. 120 [agreement "require[d] that the arbitration be conducted in accordance with specific procedures promulgated by the AAA"].) In both cases, the specified arbitration service providers would not hear the parties' disputes and, hence, the trial court was unable to follow the "method of appointing an arbitrator" provided by the parties' agreements. (§ 1281.6.) Given the flexibility of Option No. 2 of the Arbitration Clause, that circumstance is not present here.

## DISPOSITION

The order denying the petition to compel arbitration is reversed. The award of $2,430 in attorney fees to HMDG is vacated. The case is remanded with directions to conduct additional proceedings, which are consistent with the views expressed herein. Defendants shall recover their costs in connection with this appeal.

**CERTIFIED FOR PUBLICATION**


HEESEMAN, J.[*]

We concur:


CROSKEY, Acting P. J.


KITCHING, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17