Filed 3/3/16  Viamontes v. Adriana's Insurance Services CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LISET VIAMONTES et al., | B253407 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC502472) |
| v. | |
| ADRIANA'S INSURANCE SERVICES, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Reversed with directions.

Michelman & Robinson, Mona Z. Hanna, W. Spencer Hammer, III and Robin James for Defendants and Appellants.

Matern Law Group, Matthew J. Matern and Rania S. Habib for Plaintiffs and Respondents.

_____

# INTRODUCTION

Defendants Adriana's Insurance Services, Inc. (Adriana's) and Veronica's Insurance Services, Inc. (Veronica's) appeal from an order denying their petitions to arbitrate employment-related claims brought by their employees, Plaintiffs Aldo Alpizar and Liset Viamontes, in the Superior Court. Defendants based their petitions on stand-alone Agreements for Binding Arbitration (the Agreements) that both Plaintiffs admittedly signed as a condition of their employment, and a separate Arbitration Agreement section of Defendants' Employee Handbook (the Handbook) that was purportedly incorporated into the Agreements by reference. Plaintiffs opposed the petitions on the principal grounds that there had been no meeting of the minds because Plaintiffs never received a copy of the Handbook, and that the Agreements were unconscionable because they required only Plaintiffs, but not Defendants, to arbitrate their employment-related disputes. The trial court found Defendants' evidence insufficient to establish that Plaintiffs had received the Handbook in connection with signing the Agreements and, on that basis, concluded the Agreements, standing alone, were unconscionable. The court denied Defendants' petitions to compel arbitration accordingly.

On appeal, Defendants contend the trial court's finding that Plaintiffs had not received the Handbook was an insufficient basis for denying their petitions to arbitrate. Defendants also argue the trial court abused its discretion by denying their request for a continuance to submit additional evidence proving Plaintiffs had in fact received the Handbook. While we agree with Defendants that the signed Agreements were sufficient to establish Plaintiffs agreed to arbitrate their employment-related claims, we disagree with their contention that the trial court's finding was insufficient to support its unconscionability ruling. Nevertheless, to the extent it was the trial court, at the hearing, that first linked unconscionability to the absence of evidence establishing Plaintiffs received the Handbook, we conclude it was an abuse of discretion to deny Defendants' request for a brief continuance to submit additional evidence on this pivotal factual issue. Accordingly, we will reverse the order and direct the trial court to allow Defendants to

2

submit the additional evidence.  Plaintiffs shall have an opportunity to respond to the new evidence before the court rules on the petitions.

## FACTS AND PROCEDURAL BACKGROUND

Defendants Adriana's and Veronica's are companies licensed to sell auto insurance policies in California and Texas.  Alpizar is a former employee of Adriana's.  Viamontes is a former employee of Veronica's.  Plaintiffs allege Adriana's and Veronica's are affiliated entities, and the individual defendants—the founders and chief executive officers of Adriana's and Veronica's—are the companies' alter egos.

Plaintiffs filed a putative class action complaint against Defendants in the superior court, wherein they allege Defendants committed various wage and hour violations prohibited under the Labor Code.  The complaint asserts causes of action for (1) failure to provide required meal periods; (2) failure to provide required rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7) failure to furnish accurate itemized statements; (8) injunctive relief under the Unfair Competition Law, Business and Professions Code section 17200 et seq. (UCL); and (9) penalties under the Labor Code Private Attorney General Act, Labor Code section 2698 et seq. (PAGA).

In response to the complaint, Defendants filed substantively identical petitions to compel arbitration of each Plaintiff's individual claims.  Defendants supported the petitions with declarations from each company's director of human resources.  Both declarations state in substantive part:

"Attached hereto as Exhibits 'A' and 'B' are true and correct copies of the Agreement for Binding Arbitration signed by [Aldo Alpizar/Liset Viamontes] and Arbitration Agreement section of the Employee Handbook that is referenced in the Agreement for Binding Arbitration signed by [Aldo Alpizar/Liset Viamontes]. . . . In my capacity as the [human resources director] at [Adriana's/Veronica's], I witnessed and accepted Plaintiff [Aldo Alpizar's/Liset Viamontes'] signature on the Agreement for Binding Arbitration. My signature appears on the document."

The Agreement for Binding Arbitration signed by Alpizar, and attached as Exhibit A to the declaration by Adriana's human resources director, provides:

> I KNOWINGLY AND VOLUNTARILY AGREE TO SUBMIT AND SETTLE ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO MY EMPLOYMENT RELATIONSHIP WITH ADRIANA'S TO ARBITRATION AS DESCRIBED IN THE 'ARBITRATION AGREEMENT' SECTION OF THIS HANDBOOK. I AGREE THAT THE ARBITRATION OF SUCH ISSUES, INCLUDING THE DETERMINATION OF ANY AMOUNT OF DAMAGES SUFFERED, SHALL BE FINAL AND BINDING UPON ME AND ADRIANA'S TO THE MAXIMUM EXTENT PERMITTED BY LAW. I REALIZE BY AGREEING TO ARBITRATION, I WILL HAVE WAIVED MY RIGHT TO TRIAL BY JURY. THIS POLICY CANNOT CHANGE EXCEPT BY WRITTEN AGREEMENT BETWEEN ADRIANA'S AND ME.

The Agreement signed by Viamontes, and attached as Exhibit A to the declaration of Veronica's human resources director, is identical to the foregoing, except in that references to "ADRIANA'S" refer to "VERONICA'S"; the first sentence of the clause contains the apparent typographical error—"I KNOWINGLY AND VOLUNTARY [*sic*] AGREE"; and the last sentence contains two more typographical errors—"I REALIZE BY AGREEING TO ARBITRATION, I WILL HAVE WIVED [*sic*] MY RIGH [*sic*] TO TRIAL BY JURY; . . . ."[1]

The Arbitration Agreement section to the Employee Handbook, attached as Exhibit B to both declarations, purports to explain what arbitration is and why binding arbitration is preferable to a lawsuit in Veronica's and Adriana's view. Additionally, the Handbook describes the procedures that will govern the arbitration. These procedures include, inter alia, (1) "[t]he arbitrations shall be conducted by a retired Judge, or such other persons as agreed to, jointly selected by the parties"; (2) "[b]oth parties shall have all rights of discovery and remedies as he or she would in a civil action in California"; (3) "the determination of any amount of damages suffered, shall be final and binding upon the employee and [Adriana's/Veronica's] to the maximum extent permitted by law"; (4) "[t]he employee and [Adriana's/Veronica's] shall each initially bear their own costs and attorney's fees," "[t]he arbitrator shall award attorneys' fees and costs to the prevailing party as per the law and causes of action adjudicated" and

---

[1]     In view of these typographical errors, Viamontes contends there could have been no meeting of the minds with respect to the Agreement for Binding Arbitration she signed. We disagree. To begin, the clause in which these errors appear is neither a material term of the agreement, nor one that Defendants' petition to compel sought to enforce. Rather, the clause simply gives notice of the effect of Viamontes' plain agreement to arbitrate her employment-related claims. In any event, when read in context, there can be only one construction given to these words—that they mean to give notice that by agreeing to arbitrate, Viamontes will have "waived" her "right" to trial by jury. Insofar as California law requires the court to give a reasonable construction to an arbitration agreement so as to uphold arbitration where the parties plainly intended it to encompass the subject claims, such obvious typographical errors clearly cannot be the basis for invalidating an agreement to arbitrate. (See *Pacific Inv. Co. v. Townsend* (1976) 58 Cal.App.3d 1, 9 (*Pacific Investment*).)

5

"[Adriana's/Veronica's] shall pay for the arbitrator's fees"; and (5) "[t]he arbitrator shall issue a written decision explaining the reasons for the decision."

Finally, the Handbook elaborates on which claims are subject to the Agreement for Binding Arbitration. It states in relevant part: "[I]f work-related complaints and concerns are unable to be informally resolved, then any dispute, controversy or claim arising out of or related to the employment relationship, . . . to the extent the law provides such claims may be arbitrated, shall at the request of either the employee or [Adriana's/Veronica's] be submitted to and settled by binding arbitration. . . . Such arbitration shall include any claims you have against [Adriana's/Veronica's] officers, mangers, supervisors, agents, directors or owners."

Plaintiffs opposed the petitions to arbitrate. In their supporting declarations, each Plaintiff admitted to having signed an Agreement for Binding Arbitration, but both disavowed any knowledge of the terms contained in the Handbook. Without admitting that he received the Handbook, Alpizar testified that he "did not receive any training as to the arbitration policies of Defendants" and that he "was offered no explanation as to the contents of the Employee Handbook, about the dispute resolution policies, and/or the arbitration provision specifically." For her part, Viamontes testified that on the day she signed the Agreement for Binding Arbitration she "asked for but did not receive a copy of the Employee Handbook." She, like Alpizar, also said she "was offered no explanation as to the contents of the Employee Handbook, about the dispute resolution policies, and/or the arbitration provision specifically." Both Plaintiffs testified they were "required to sign" the Agreement for Binding Arbitration as "a condition of employment," despite having no idea what the agreement meant. Based on these declarations, Plaintiffs argued there had been no meeting of the minds concerning the arbitration of their employment related claims. Alternatively, they argued the purported agreements were unconscionable and should be invalidated as such.

6

The trial court held a full hearing on Defendants' petitions. Though it did not issue a tentative ruling, the court made clear during the hearing that it was especially troubled by Viamontes' testimony that she never received the Handbook. Defendants conceded this testimony might be evidence of procedural unconscionability, but they argued it was irrelevant to whether Viamontes had entered a binding agreement to arbitrate. The court disagreed, responding that evidence about whether Viamontes received the Handbook "goes to whether there was an agreement" because the Handbook purported to define "the terms that Ms. Viamontes agreed to." When pressed on the issue, Defendants' counsel acknowledged that the declarations submitted in support of the petitions did not establish that Viamontes received the Handbook. Counsel nevertheless advised the court that Defendants had evidence, signed by Plaintiffs, to prove this fact, and he requested leave to provide that evidence "today" if the court considered it dispositive. The court did not respond to counsel's request, but asked if there was "[a]nything else Defendant wishes to argue?"

When Defendants' counsel moved on to the substantive unconscionability issue, the court again voiced its concern about the lack of evidence establishing that Viamontes received the Handbook, raising for the first time questions about whether Defendants could establish a mutual agreement to arbitrate without proving that Plaintiffs received the Handbook. "[I]n terms of substantive unconscionability," the court stressed, "[i]f there is no Handbook . . . [t]here is no discussion about mutuality." Defendants' counsel responded again that Viamontes "did sign off on the Handbook and that we have that evidence and we can submit that evidence, so to the extent that we need to do that, we respectfully request we be allowed to submit that signature page, if that is material to the court's decision. We can have that submitted promptly." Again, the court did not address the request, but instead asked if there was "[a]nything else."

Defendants closed by noting that Alpizar had not testified, like Viamontes, that he did not receive a copy of the Handbook. Unmoved, the court responded that Alpizar's declaration "[d]oesn't say he received a copy and Defendant -- does not say that

7

Defendant gave him a copy." With that, the parties indicated they had nothing further and the court proceeded to deliver its decision.

The trial court denied the petitions to compel arbitration. Focusing on the lack of evidence to prove Plaintiffs received copies of the Handbook, the court concluded that there had "not [been] a meeting of the minds as to what kind of arbitration agreements the parties entered into and that the language that the Plaintiffs signed off on [i.e., the Agreement for Binding Arbitration] [was] unconscionable." With respect to the formation of a binding agreement, the court explained that "the terms of the arbitration agreement [were] contained in a Handbook," Viamontes had testified "under oath, that she did not receive the Handbook," and the evidence, therefore, was "only one way; that she did not receive the terms of the arbitration agreement." Under these circumstances, the court reasoned, "it cannot be said that [there was a] meeting of the minds as to what the terms of an arbitration agreement would be, or that there was, in fact, a complete agreement as to arbitration." The court likewise determined "[t]he same thing could be said" with regard to Alpizar, insofar as "Defendant[s] [had] not presented any evidence that Mr. Alpizar was presented with a Handbook which contained the terms of the arbitration agreement."

Turning to unconscionability, the court found the evidence that Defendants presented the Agreements for Binding Arbitration on a "take-it-or-leave-it basis" established procedural unconscionability. As for substantive unconscionability, the court focused on the lack of mutuality in the Agreements. The court observed that "the clause that has been presented by the Defendants indicates that the Plaintiffs agreed to arbitrate their disputes with no competent agreement by the Defendant[s] to arbitrate their disputes." The court concluded this lack of mutuality, coupled with the absence of other terms ostensibly provided by the Handbook, established substantive unconscionability, and, when combined with the procedural unconscionability finding, compelled denial of Defendants' petitions arbitrate.

8

Defendants responded to the court's oral ruling by once more requesting leave to submit additional evidence proving Plaintiffs received the Handbook. Without offering a reason, the court replied, "Request is denied."

Defendants filed a timely notice of appeal from the order denying their petitions to compel arbitration.

## DISCUSSION

1.  *The Stand Alone Agreement for Binding Arbitration Establishes Only that Plaintiffs Agreed to Arbitrate Their Employment Disputes; The Lack of Mutuality Renders the Agreement Substantively Unconscionable*

"Under 'both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.' " (*Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396 (*Cruise*), italics omitted.) As with any other contract, the existence of an agreement to arbitrate requires the mutual consent of the parties to the purported agreement. (*HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1109.) Where mutual consent is established, the general rule in California is that " ' "arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute." ' " (*Cruise,* at p. 397.)

While general contract formation principles and the scope of the arbitration agreement will usually answer the threshold question, courts are regularly called upon to address the agreement's enforceability under the rubric of unconscionability, particularly where arbitration is imposed as a condition of employment. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113-114 (*Armendariz*); *Doctor's Assocs. v. Casarotto* (1996) 517 U.S. 681, 687.) As our Supreme Court explained in *Armendariz,* " 'unconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." (*Armendariz,* at p. 114.) Both procedural and substantive unconscionability must be present to render a contract unenforceable, though they need not be present in the same

9

degree.  (*Ibid.*)  Rather, courts invoke a sliding scale under which the more evidence of procedural unconscionability is present, the less substantively oppressive the contract terms need be to conclude the agreement is unenforceable, and vice versa.  (*Ibid.*)  Thus, for instance, where an employer presents a mandatory arbitration provision to a prospective employee on a take-it-or-leave-it basis, courts have found the agreement unconscionable where it requires only the employee, but not the employer, to arbitrate his or her employment-related claims.  (See, e.g., *Nyulassy v. Lockheed Martin Corp*. (2004) 120 Cal.App.4th 1267, 1282 (*Nyulassy*); *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 274; see also *Armendariz,* at p. 120 ["an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences"].)

"The determination of arbitrability is a legal question subject to de novo review." (*Nyulassy, supra,* 120 Cal.App.4th at p. 1277.)  Likewise, where no extrinsic or disputed evidence is presented to a trial court, we review questions of enforceability and unconscionability de novo.  (*O'Hare, supra,* 107 Cal.App.4th at p. 273.)  Where facts are disputed, we will uphold the trial court's resolution of such facts if supported by substantial evidence.  (*Nyulassy,* at p. 1277.)

The trial court found that Plaintiffs assented to their respective Agreements for Binding Arbitration, which both Plaintiffs signed, but that they did not agree to the additional terms contained in the Handbook.  Based on this finding, the court identified two independent grounds for denying Defendants' petitions to arbitrate.  First, the court concluded the Agreements were insufficient to establish a "meeting of the minds as to what kind of arbitration agreement the parties entered into," citing the fact that the Agreements did not set forth certain mandatory procedural terms, but instead stated these terms were contained in the Handbook.  Second, the court concluded the Agreements were unconscionable and thus unenforceable.  In that regard, the court determined the Agreements were procedurally unconscionable because Defendants presented them on a

10

take-or-leave-it-basis, and substantively unconscionable because the Agreements required only Plaintiffs, but not Defendants, to submit claims to arbitration.

Defendants contend the trial court's finding does not support its ruling. They argue the signed Agreements establish Plaintiffs agreed to arbitrate their claims, even if Plaintiffs did not agree to the procedural terms contained in the Handbook. As for unconscionability, Defendants argue the court should have considered the Handbook in assessing whether Defendants also agreed to submit their claims to arbitration, notwithstanding the finding that Plaintiffs did not receive the Handbook. While we agree that the signed Agreements, standing alone, were sufficient to establish the existence of an agreement to arbitrate, we disagree with Defendants concerning the unconscionability analysis.

Our resolution of both issues is largely compelled by this court's holding in *Cruise*. In that case, like this one, the defendant employer moved to compel arbitration pursuant to an arbitration clause that purported to incorporate by reference a separate arbitration policy. (*Cruise, supra,* 233 Cal.App.4th at p. 392.) The clause stated, in pertinent part, " '*MANDATORY FINAL & BINDING ARBITRATION: I acknowledge and understand that the Company has a Dispute Resolution Program that includes a Mediation & Binding Arbitration Policy (the "Policy") applicable to all employees and applicants for employment . . . . I acknowledge, understand and agree that the Policy is incorporated into this [document] by this reference as though it is set forth in full, . . . the Policy applies to any employment-related disputes that exist or arise between Employees and the Company*' " (*Id.* at p. 396, underscoring omitted, some italics added.) The trial court denied the employer's motion, ruling the employer failed to prove the existence of an arbitration agreement because its proffered evidence was insufficient to establish that the arbitration policy attached to its moving papers existed at the time the plaintiff read and signed the document containing the arbitration clause. (*Id.* at p. 392.) This court reversed.

11

The *Cruise* court concluded the arbitration clause, standing alone, was sufficient to establish the parties agreed to arbitrate their employment-related claims. (*Cruise, supra,* 233 Cal.App.4th at p. 392.) Because the arbitration clause clearly stated that all employment-related claims were subject to mandatory arbitration, the court concluded there was "no question" that the parties agreed to arbitrate such disputes. (*Id.* at p. 397.) The "only impact" of the employer's inability to establish the contents of the arbitration policy, this court explained, was that the employer had "failed to establish that the parties agreed to govern their arbitration by procedures different from those prescribed in the [California Arbitration Act]," Code of Civil Procedure section 1280 et seq. (*Cruise,* at p. 399.) Thus, "[w]hile the parties' agreement to arbitrate [was] enforceable, the employer's inability to establish the contents of its Arbitration Policy preclude[d] the employer from enforcing the provisions of said policy." (*Id.* at p. 400.) Under these circumstances, statutory law dictated that the arbitration proceeding be conducted in accordance with the procedures set forth in the California Arbitration Act and applicable case law. (*Ibid.*; see, e.g., Code Civ. Proc., §§ 1281.6, 1282, 1282.2 [generally providing that unless the parties agree otherwise, the conduct of an arbitration proceeding is controlled by the California Arbitration Act].)

Under *Cruise*, Defendants are correct that the trial court's finding regarding the Handbook did not support its conclusion that there was no meeting of the minds concerning the agreement to arbitrate. Insofar as Plaintiffs signed the Agreements for Binding Arbitration, which stated "I knowingly and voluntarily agree to submit and settle any dispute, controversy or claim arising out of or relating to my employment relationship with [Adriana's/Veronica's] to arbitration" (capitalization omitted), there is no question that they agreed to arbitrate their employment-related claims. (See *Cruise, supra,* 233 Cal.App.4th at p. 397.) Thus, if we were exclusively concerned with whether Plaintiffs agreed to arbitrate, we would hold, consistent with *Cruise*, that the only impact of Defendants' failure to establish Plaintiffs received the Handbook is to require the arbitration to be conducted in accordance with the California Arbitration Act. (See *id.* at

12

p. 400.)  However, the trial court's unconscionability ruling adds another layer to our analysis.

The trial court concluded the Agreements for Binding Arbitration were substantively unconscionable because they required only the undersigned Plaintiffs to "submit and settle any dispute, controversy or claim arising out of or relating to my employment relationship . . . to arbitration."[2]  Citing *Cruise*, Defendants principally contend the trial court should have considered the contents of the Handbook in determining whether the Agreements were substantive unconscionability.[3]  Insofar as the Handbook states that "any dispute, controversy or claim arising out of or related to the employment relationship, . . . shall at the request of *either the employee or [Adriana's/Veronica's]* be submitted to and settled by binding arbitration" (italics added), Defendants argue the requisite mutuality is present.

---

[2]     Defendants do not dispute that the evidence supported the court's procedural unconscionability ruling.

[3]     At oral argument, Defendants asserted the language in the stand alone Agreements was sufficiently mutual to be enforced without the Handbook, citing *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 as purportedly analogous authority.  The language in *Roman* stated in pertinent part:  " 'I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration.' " (*Id.* at p. 1467, fn. omitted.)  Focusing on the " 'all disputes . . . *will be* submitted to binding arbitration' " language, the *Roman* court found the clause broad enough to encompass both the employee's and the employer's employment-related claims, particularly "given the public policy favoring arbitration." (*Id.* at pp. 1471, 1473, italics added.)  In contrast to the broad " 'will be submitted' " language in *Roman,* here, the clause narrowly states that "I"—i.e., the undersigned employee—"knowingly and voluntarily agree *to submit* and settle any dispute, controversy or claim arising out of or relating to *my* employment relationship with [Adriana's/Veronica's] to arbitration." (Capitalization omitted, italics added.)  Unlike the language in *Roman*, this I-agree-to-submit language is specific to the undersigned employee and does not admit of a reasonable interpretation under which it could also apply to the employer's claims.

13

Defendants misread *Cruise*. In support of their contention that the trial court should have considered the Handbook's contents in analyzing unconscionability, Defendants claim the *Cruise* court "did not consider the separate Arbitration Policy when deciding the binding effect of the arbitration agreement . . . but did consider the Arbitration Policy when deciding the enforceability of a specific procedure enumerated therein." The *Cruise* court did no such thing. The pertinent holding in *Cruise* is just the opposite—"the employer's inability to establish the contents of its Arbitration Policy *precludes the employer from enforcing the provisions of said policy*." (*Cruise, supra,* 233 Cal.App.4th at p. 400, italics added.) With regard to unconscionability, this court explained in *Cruise* that the plaintiff's unconscionability arguments had no merit, because the arbitration would be governed by California statutory and case law—not the separate arbitration policy. (*Ibid.*)

More to the point, the plaintiff in *Cruise* raised a similar substantive unconscionability challenge based on a purported lack of mutuality, and this court rejected that challenge based on language *in the arbitration agreement* that was decidedly different than the language with which the trial court took issue in this case. The language in *Cruise* stated in pertinent part: " 'the Company likewise agrees to mandatory final and binding arbitration of any Covered Disputes, whether initiated or participated in by me or by the Company, in accordance with the Policy. . . .' " (*Cruise, supra,* 233 Cal.App.4th at p. 397.) In contrast, the operative language in the Agreements contains a unilateral pledge by the undersigned employee that "I knowingly and voluntarily agree to submit and settle any dispute, controversy or claim arising out of or relating to my employment relationship . . . to arbitration." (Capitalization omitted.) Unlike the pertinent language in *Cruise*, this language simply is not susceptible of an interpretation that requires Defendants to submit their claims against their employees to arbitration.

14

Thus, while the trial court erred in concluding the signed Agreements were insufficient to establish Plaintiffs agreed to arbitrate their claims, the court was correct in ruling that the Agreements, standing alone, were too one-sided to be enforced as a condition of Plaintiffs' employment. That said, we agree with Defendants that the language in the Handbook—stating, any employment-related dispute "shall at the request of *either the employee or [Adriana's/Veronica's]* be submitted to and settled by binding arbitration" (italics added)—cures this lack of mutuality. The trial court refused to consider the Handbook because it found Defendants failed to establish Plaintiffs received the document. Inasmuch as this finding proved dispositive, it raises the difficult question of whether the court erred by denying Defendants' request for a brief continuance to submit additional evidence to prove Plaintiffs received the Handbook. We turn to that question now.

2. *The Trial Court Abused Its Discretion When It Denied Defendants' Request for a Continuance to Submit Potentially Dispositive Evidence Concerning Plaintiffs' Receipt of the Handbook*

The principles that control our review of the court's ruling denying Defendants' request for a continuance are well settled. The trial court has the "inherent power . . . to exercise its discretion and control over all proceedings relating to the litigation before it." (*Johnson v. Banducci* (1963) 212 Cal.App.2d 254, 260.) This discretionary power includes the authority to take evidence necessary for a decision (*ibid*.), and to continue a hearing, unless such postponement is prohibited by law (*Curtis v. Underwood* (1894) 101 Cal. 661, 669). Thus, in ruling on a motion, the trial court may allow tardy evidence, provided doing so will not result in undue prejudice to opposing parties. (*Alvak Enterprises v. Phillips* (1959) 167 Cal.App.2d 69, 74-75.) It may also continue the hearing, or deny a continuance, so long as its decision "is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.)

" ' "The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown." ' " (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 695-696.)  In other words, judicial discretion must be measured against the governing law, and it must be exercised in such a manner as to best effectuate the purposes of such law.  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393-394 (*Horsford*).)  "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion."  (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

As discussed, the trial court based its unconscionability ruling entirely upon its predicate finding that Plaintiffs had not received the Handbook.  At the hearing on the petitions, after all briefs had been filed, Defendants' counsel represented that Defendants had evidence to prove that Plaintiffs had in fact received the Handbook, but Defendants had failed to submit that evidence with their moving papers.  Notwithstanding Defendants' admitted oversight, counsel requested a brief continuance to file the evidence "today."  The trial court denied the request without stating a reason for its ruling.

The trial court has discretion to refuse a continuance where good cause is lacking. (See *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 781.)  "However, '[t]he trial judge must exercise his discretion with due regard to all interests involved, and the refusal of a continuance which has the practical effect of denying the applicant a fair hearing is reversible error.  [Citations.]' " (*In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169.)  Thus, good cause for a continuance exists when a new argument is raised after the time prescribed for briefing has passed and the responding party requires a postponement to enable it to meet the new issue.  (See *id.* at pp. 1169-1170.)

16

Critically, in the instant case, it was the trial court, at the hearing on the petitions, that first connected the substantive unconscionability issue with Defendants' failure to present direct evidence proving that Plaintiffs received the Handbook.  Though Plaintiffs had suggested in their declarations that they did not receive the Handbook, their opposition briefs cited this evidence only to argue that there had been no meeting of the minds concerning the procedural terms contained in the Handbook.  Plaintiffs' opposition briefs did not address the clause in the Handbook requiring any employment-related dispute to be submitted to binding arbitration "at the request of *either the employee or [Adriana's/Veronica's],*" nor did they argue the clause should not be considered in connection with the substantive unconscionability analysis, even though the Agreements purported to incorporate the Handbook by reference.  Rather, it was the trial court that first linked the mutuality issue to the factual question about whether Plaintiffs received the Handbook to challenge Defendants' contention that Plaintiffs had failed to establish substantive unconscionability.  Because the trial court raised this issue for the first time at the hearing on the petitions, we conclude there was good cause to grant a brief continuance to enable Defendants to meet the issue with supplemental evidence directly addressing the court's novel concern.

Our conclusion is bolstered by policy considerations that favor resolving questions of arbitrability on their merits.  As a general policy matter, our Supreme Court has cautioned against mechanically applying procedural rules in specific cases at the expense of achieving substantial justice.  Thus, in *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, the high court observed that " ' "[r]igid rule following is not always consistent with a court's function to see that justice is done.  Cognizant of the *strong policy favoring the disposition of cases on their merits* [citations], judges usually consider whether to exercise their discretion . . . and frequently consider documents which have been untimely filed." ' " (*Id.* at p. 1364.)  In that regard, the *Elkins* court added that, "in the absence of a demonstrated history of litigation abuse, '[a]n order based upon a curable procedural defect . . . , which effectively results in a judgment against a party, is an abuse of discretion.' " (*Ibid.*)

17

The record in this short-lived case reveals no demonstrated history of litigation abuse. On the contrary, as Defendants have explained, their oversight in bringing the omitted evidence to the court's attention stemmed in part from the fact that Plaintiffs had not argued that their supposed non-receipt of the Handbook rendered the Agreements unconscionable. Consistent with this explanation, the record shows it was *the court* that first linked unconscionability with Plaintiffs' claim that they had not received the Handbook, at which point Defendants promptly requested a brief continuance to present evidence on the issue. While we are sympathetic to the court's apparent reluctance to delay resolution of the petitions after they had been fully briefed, we nevertheless conclude the court's ruling unreasonably elevated procedural considerations over the ends the procedural rules are meant to achieve.

Rules of procedure and calendar management are required for a purpose: to promote the just resolution of cases on their merits. (*Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1246.) "Accordingly, decisions about whether to grant a continuance . . . 'must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.' " (*Ibid.*) That is the case here. Defendants' counsel represented that direct evidence proving Plaintiffs received the Handbook could be submitted that very day. Thus, while the trial court was understandably troubled by Defendants' oversight, the cost in regard to timely resolution of the petitions would nevertheless have been minimal. More importantly, allowing the evidence to be presented would have greatly advanced the ultimate end of resolving the petitions on their merits. Given the dispositive finding that resulted from the absence of such evidence, the ends of substantial justice compelled a brief continuance to allow Defendants to proffer what counsel represented to be highly relevant evidence on this critical factual issue.

The balance in this case tilts even further in favor of allowing a continuance because the request arose in connection with petitions to enforce Agreements for Binding Arbitration that Plaintiffs admittedly signed. Under California law, "[a]rbitration is highly favored as a method for settling disputes," and courts must "indulge every intendment to give effect to such proceedings." (*Pacific Investment, supra,* 58 Cal.App.3d at p. 9; *Cruise, supra,* 233 Cal.App.4th at p. 397.) In ruling on Defendants' request for a continuance, the trial court was obliged by this context to exercise its discretion in such a manner as to best effectuate the purposes of such law. (*Horsford, supra,* 132 Cal.App.4th at p. 394.) The ruling here, even when viewed through the lens of Defendants' failure to present the subject evidence with their moving papers, cannot be reconciled with the governing law favoring enforcement of legitimate agreements to arbitrate. The court should have allowed the continuance to ensure that its assessment of the enforceability of the parties' agreements to arbitrate was based on all relevant evidence.

Finally, the usual elements of prejudice that typically attend the denial of a continuance simply are not present here. This is not a case where a party has made an unexpected request to continue an impending dispositive motion or trial date under circumstances that could thwart months of an opponent's preparation or further delay resolution of a long pending dispute. No, this case stands at its very inception and the petitions to compel arbitration represent Defendants' initial response to the lawsuit. Indeed, the very purpose of the petitions was to determine whether the Superior Court was the proper forum for adjudicating Plaintiffs' claims in the first instance. Of course, the length of the continuance would need to allow sufficient time for Plaintiffs to prepare a response to the new evidence. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538.) But with that due process protection in place, we see no rational basis to find any meaningful prejudice to Plaintiffs from allowing a brief pause in the proceedings to resolve this important foundational issue on a complete record.

The trial court abused its discretion when it denied Defendants' request for a brief continuance to submit evidence concerning Plaintiffs' receipt of the Handbook. To the extent the record demonstrates a different result is probable if this evidence is credited, this was reversible error.[4] (See *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)

## DISPOSITION

The order is reversed and the trial court is directed to allow Defendants to submit additional evidence concerning Plaintiffs' purported receipt of the Handbook. Plaintiff shall have an opportunity to respond to the evidence before the court rules on the petitions to compel arbitration. In the interest of justice, the parties shall bear their own costs.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

JONES, J.[*]

We concur:

ALDRICH, Acting P. J.

LAVIN, J.

---

[4] We express no opinion as to the credibility of the evidence Defendants will submit. We likewise express no opinion as to whether Plaintiffs' responsive evidence may be sufficient to support a finding that they did not receive the Handbook notwithstanding Defendants' new evidence. These are factual issues to be resolved by the trial court on remand.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.