Filed 11/30/22  Hill v. Quaid Harley-Davidson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LISA HILL, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> QUAID HARLEY-DAVIDSON, INC., <br><br> Defendant and Appellant. | D080076 <br><br><br> (Super. Ct. No. CIVDS1826573) |

APPEAL from an order of the Superior Court of San Bernardino County, Wilfred Schneider, Jr., Judge.  Affirmed.

Scali Rasmussen, Halbert B. Rasmussen and Juliet S. Pearson for Defendant and Appellant.

Pestotnik and Ross H. Hyslop for Plaintiff and Respondent.

## INTRODUCTION

Quaid Harley-Davidson, Inc. (Quaid), a defendant in a class action lawsuit, appeals the trial court's order denying its petition to compel

arbitration of the claims of a subset of the class. (Code Civ. Proc.,[1] § 1281.2.) Quaid neglected to request the trial court issue a statement of decision explaining the factual and legal bases of its order. (§§ 632, 1291.) It did not address the consequences of this omission in its opening brief on appeal. We conclude Quaid has forfeited two of its appellate challenges by failing to articulate and tailor its arguments to the correct standard of review, and by failing to acknowledge evidence unfavorable to its position. We further conclude its appeal lacks merit notwithstanding any forfeiture. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Class Allegations*

In a second amended complaint (complaint) filed in May 2019, plaintiff Lisa Hill asserted causes of action against Quaid arising from her purchase of a motorcycle from Quaid. Her complaint included individual claims as well as proposed class claims.

In support of the proposed class claims, Hill alleged, among other things, that Quaid charged her a $1,299 dealer preparation fee (also referred to as a "pre-delivery inspection and setup fee") in connection with her motorcycle purchase. Unknown to Hill, Quaid was already being compensated for the dealer preparation work by Harley-Davidson Motor Company, Inc. (Harley-Davidson). Hill alleged Quaid routinely and systematically charged its customers dealer preparation fees without disclosing that it was being paid twice for the same work.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

2

Hill alleged such " 'double-billing' schemes" are prohibited by title 13, section 262.03 of the California Code of Regulations, which provides that "[a] dealer may not identify a separate charge or charges for services performed on vehicles prior to delivery to the extent the dealer is or will be reimbursed for such expenditures by another party."  On behalf of herself and all others similarly situated, she stated causes of action for false advertising (Bus. & Prof. Code, § 17500), violation of the Consumer Legal Remedies Act (Civ. Code, § 1750), unfair business practices (Bus. & Prof. Code, § 17200), negligent misrepresentation (Civ. Code, §§ 1572, 1709, 1710), fraud, and unjust enrichment.  On behalf of the class, Hill sought damages, restitution, and an injunction.[2]

## II.

### *Quaid's Answer to the Complaint and Retraction of Its Demand for Arbitration with Hill*

Quaid filed an answer to the complaint in which it asserted failure to arbitrate as its eighteenth affirmative defense to Hill's individual claims.  As its thirty-second affirmative defense (which it did not limit to Hill's individual claims), it alleged the court "lacks jurisdiction due to the presence of a mandatory, binding arbitration clause in one of the operative agreements" and "reserve[d] the right to compel arbitration."  In the event the court certified a class over its objections, it additionally asserted "the affirmative defenses set forth herein" against each member of the certified class.

---

[2]     Hill also asserted causes of action for negligence and breach of express and implied warranties.  However, a class was not certified as to these causes of action.

3

The parties then engaged in written discovery and depositions to investigate the class claims and prospects for certification. In May 2020, Quaid served responses to form interrogatories requesting information relating to Quaid's two arbitration-related affirmative defenses (affirmative defenses nos. 18 and 32). Quaid's responses to these interrogatories stated it was "not presently aware of" any facts, witnesses, or documents supporting either of these affirmative defenses. (Boldface omitted.) In January 2021, Quaid provided Hill the verification form verifying these responses. Quaid did not contend in its responses to written discovery that class members other than Hill had signed arbitration agreements.

III.

*A Class Is Certified over Quaid's Objection to Including in the Class Those Class Members Purportedly Bound By Arbitration Provisions*

In May 2021, Hill moved for certification of a proposed class consisting of consumers who purchased or leased a new motorcycle from Quaid from October 5, 2014, through the date of final class notice, or trial.

In opposition, Quaid sought to exclude a subset of individuals who were assertedly bound to arbitrate their disputes with Quaid from the proposed class.[3] According to Quaid, over 300 of these individuals had signed sales contracts with Quaid that contained arbitration clauses. Over 200 more individuals had signed sales contracts that did not contain arbitration clauses but incorporated addenda containing arbitration clauses. The addenda were Guaranteed Asset Protection (GAP) addenda, and were signed by customers who, when purchasing their motorcycle, also purchased

---

[3] Quaid asserted it sold 1,338 motorcycles between October 5, 2014, and the date it filed its opposition to class certification.

4

insurance protection covering the difference between the fair market value of the motorcycle and the outstanding balance remaining on the purchase price of the motorcycle in the event it was stolen or damaged beyond repair.

In June 2021, the trial court issued an order certifying the following class: " 'All consumers who purchased or leased a new motorcycle from Quaid Harley-Davidson and were charged a pre-delivery inspection and set up fee or "DLR PREP" fee between March 4, 2015 and [the day before the class notice is mailed].' " The court declined Quaid's request to exclude the subset of individuals purportedly bound by arbitration agreements from the class. It found the arbitration provision in Quaid's sales contracts did not make arbitration mandatory, but merely optional, meaning individuals bound by such provisions could choose to litigate their disputes by remaining a party to the class action. It further found the GAP addenda covered disputes concerning GAP insurance, which was "not at issue in this class litigation."

The trial court appointed Hill's counsel, Ross Hyslop, to serve as class counsel, and directed the parties to meet and confer and present a joint motion on the subject of class notice.[4] In August 2021, the court approved a class notice that was to be sent to class members in September that year.

---

[4]     Under rule 3.766 of the California Rules of Court, the content and manner of class notice is subject to court approval. (Cal. Rules of Court, rule 3.766(d), (e).) Rule 3.766(b) requires the class proponent to submit "a statement regarding class notice and a proposed notice to class members." This statement must address "[w]hether notice is necessary," "[w]hether class members may exclude themselves from the action," "[t]he time and manner in which notice should be given," "[a] proposal for which parties should bear the costs of notice," and, "[i]f cost shifting or sharing is proposed under subdivision (4), an estimate of the cost involved in giving notice." (Cal. Rules of Court, rule 3.766(b)(1)–(5).) The appellate record does not include the parties' joint motion or resulting court order relating to class notice.

IV.

*Quaid's Petition to Compel Arbitration with a Subset of Class Members*

*Is Denied*

A.    *Quaid's Petition to Compel Arbitration*

Before class notice was served, Quaid filed a petition to compel

arbitration pursuant to section 1281.2.[5]

In its petition, Quaid identified four principal types of sales contract

forms that it used during the period covered by the class claims.  The first

type, which Quaid called "VSC-ARB," was a vehicle sales contract that had

an arbitration provision.  The second type, referred to by Quaid as "RISC-

ARB," was a retail installment sales contract that had an arbitration

---

[5]    Section 1281.2 provides, in relevant part:  "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:  [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for rescission of the agreement.  [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.  For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition."  Quaid's notice of petition, in addition to citing section 1281.2, also cited section 1281.4 as authority supporting its petition.  In the body of its petition, it additionally purported to rely on the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (FAA).  On appeal, however, Quaid treats its petition as brought pursuant to section 1281.2.  It does not cite section 1281.4, and it cites the FAA only for the proposition that "[f]ederal law . . . strongly favors arbitration."  Accordingly, like Quaid, we shall construe its petition as governed by section 1281.2.

provision. The third and fourth types, "MPA + GAP" and "RISC + GAP," referred to motorcycle purchase agreements and retail installment sales contracts that lacked arbitration provisions but which, for those customers who purchased GAP coverage and signed a GAP addendum, incorporated the GAP addendum, which had an arbitration provision.

In support of its petition, Quaid filed two declarations, one from Jayme Davis, Quaid's business manager with responsibility for maintaining its business records, and another from its attorney, Dana Cohn. Davis identified and authenticated representative examples of the types of contract forms Quaid used during the relevant time frame. Sample contract forms that were either blank or redacted to remove identifying information were attached to his declaration. Davis's declaration included the table below, which Davis averred "summarizes each sales contract form that included an arbitration agreement":

| Contract Form | Approx. No. of Class Members | Arbitration Agreement Location | Notes |
|---|---|---|---|
| VSC-ARB | 332 | Directly in MPA agreement | N/A |
| RISC-ARB | 3 | Directly in RISC | N/A |
| MPA+GAP | 167 | In GAP Addendum | Two Versions of MPA: MPA-2012 MPA-2013 |
| RISC+GAP | 58 | In GAP Addendum | Two Versions of RISC: RISC-2013 RISC-2016 |
| Total | 560 | | |

Cohn averred that after the trial court granted class certification, she "attempted to meet and confer with Plaintiff's counsel regarding Plaintiff amending the class definition, or stipulating to arbitration for those class members who signed Arbitration Agreements." She further averred: "On or about August 24, 2021, I contacted Plaintiff's counsel again [via email] to request Plaintiff amend the class definition, or stipulate to arbitration for

those class members who signed Arbitration Agreements." A copy of Cohn's August 24 email exchange with Hyslop was attached to Cohn's declaration. Cohn wrote to Hyslop:

> "We know that we have discussed this in the past, that it was a topic in our Opposition to your Motion for Class Certification, and that the Court did not exclude from the class definition those class members who signed arbitration agremeents [*sic*]. However, we ask again if you are willing to amend the class definition and/or to otherwise exclude those class members who signed arbitration agreements when they purchased their motorcycles. If not, we will be filing a motion to compel arbitration against those class members. [¶] Please advise."

Hyslop responded to Cohn: "No thanks."

Based on this evidence, Quaid sought an order compelling class members who signed sales contracts containing or incorporating arbitration agreements to arbitrate their disputes. Quaid argued the order should issue because the class members' claims fell within the scope of the arbitration agreements, and "Plaintiff has refused to exclude from any potential class, class members who signed arbitration agreements." It further argued the relevant arbitration provisions required arbitration to proceed individually, not on a class-wide basis, such that "customers who are compelled to arbitration . . . must be excluded from the present class." Quaid also sought an immediate stay of proceedings, "includ[ing] issuance of the class notice."

B.    *Hill's Opposition*

Hill filed an opposition to Quaid's petition, supported by a declaration from Hyslop. In his declaration, Hyslop disputed Cohn's account of her prior communications with him. He averred, "neither [Quaid] nor Ms. Cohn has **ever** demanded arbitration of anyone except Ms. Hill (a request that [Quaid] later abandoned . . .)." He further averred that contrary to Cohn's representations, "at no time has [Quaid] or its counsel ever asked me whether

8

I would '**stipulate to arbitration for those class members who signed Arbitration Agreements**.' " He explained that Cohn's August 24, 2021 email merely asked whether he would be " 'willing to **amend the class definition** and/or to **otherwise exclude those class members who signed arbitration agreements** when they purchased their motorcycles.' " He stated, "[g]iven that the Court had already rejected [Quaid's] argument" to exclude these class members, he "declined Ms. Cohn's proposal."

Hyslop further averred: "Indeed, when Ms. Cohn made her request on August 24, 2021, two and a half months after the Court's . . . class certification order was entered, [Quaid] still had not produced the class list to either [the class administrator] or me. Nor did Ms. Cohn identify by name who [Quaid] proposed to exclude. As such, I had no idea who among members of the class [Quaid] even contended was required to arbitrate (nor did I have any contact information for any class members), and therefore did not even have ability to make an inquiry to any such class member." (Italics omitted.) Hyslop stated that in his view, Quaid's petition "appears to be expressly designed so that class members who are allegedly 'bound' to arbitrate will not even *know* there is a 'controversy' . . . until *after* an order [compelling arbitration] has been entered."

Hyslop also averred that Quaid "did not plead arbitration as an affirmative defense to the claims of putative class members." (Boldface omitted.) Nor had it ever "contended in any of its responses to written discovery that other class members [i.e., other than Hill] had signed arbitration agreements." (Boldface omitted.) Attached to Hyslop's declaration was a copy of Quaid's responses to Hill's form interrogatories. As to each of its affirmative defenses numbers 18 and 32, Quaid stated that it was "not presently aware of any facts supporting this affirmative defense,"

9

"not presently aware of any persons with any knowledge of any facts supporting this affirmative defense," and "not presently aware of any documents in support of this affirmative defense." (Boldface omitted.) Hyslop averred Quaid provided the verification for these responses in late January 2021, thus verifying the responses were still accurate "about nine (9) months ago." Hyslop further averred the first time Quaid claimed class members other than Hill had signed arbitration agreements was in its May 2021 opposition to Hill's motion for class certification.

In her opposition brief, Hill identified several grounds for denying Quaid's petition. Relevant here, she argued Quaid failed to establish a prior demand and refusal to arbitrate as required by section 1281.2. She argued Quaid's "secretive procedure for seeking an arbitration order without notice . . . violates fundamental due process rights of those unnamed class members who are impacted." She contended the allegations of Quaid's cross-complaint[6] in which it "blame[d]" Harley-Davidson "for its misconduct" showed there was a possibility arbitration would lead to conflicting rulings on common issues of law or fact, supporting discretionary denial of the petition under section 1281.2, subdivision (c).

Hill also argued Quaid waived its right to arbitrate disputes of unnamed members by taking actions inconsistent with assertion of a right to

_____

[6] In July 2021, Quaid filed an amended cross-complaint (cross-complaint) for indemnity, contribution, and other relief against Harley-Davidson. Quaid alleged it "took [actions] at the behest of [Harley-Davidson] in regards to . . . dealer preparation, and customer charges as to the same." It alleged Harley-Davidson willfully failed to comply with legal requirements for furnishing required price labels for new motorcycles. It further alleged the "Vehicle Pricing Claims [i.e., the claims against Quaid relating to dealer preparation fees] resulted from, and were proximately caused by, the acts and omissions of" Harley-Davidson.

arbitrate, including by serving discovery responses in which it denied knowledge of evidence supporting its affirmative defenses numbers 18 and 32, and by failing to raise affirmative defenses that asserted a right to arbitration of the disputes of unnamed class members. Finally, she argued Quaid's petition, as framed, was nothing more than an improper motion for reconsideration of the court's prior ruling rejecting Quaid's claim that certain class members were bound to arbitrate their disputes.

C.     *Quaid's Reply*

In reply, Quaid submitted additional declarations from Cohn and Davis. Cohn averred the class list "was not complete" on August 24, 2021 when she emailed Hyslop. However, "[o]nce the class list was ready"—Cohn did not say when this was—she provided it to the class administrator, who provided it to Hyslop.[7]

Davis averred he had "prepar[ed] the list of class members." In this list, he "delineated between class members who signed arbitration agreements and those who did not" by placing a "Y (signifying yes)" next to the names of the class members with arbitration agreements. The list itself was not attached to Davis's or Cohn's declarations.

Quaid argued in its reply brief that it "[r]epeatedly [d]emanded" that Hill and "[c]lass [c]ounsel" submit to arbitration of the claims of class members who signed arbitration agreements. (Boldface omitted.) It argued Hill's complaint qualified as a refusal to arbitrate. It claimed it "demanded/elected" arbitration by raising arbitration in opposition to Hill's

---

7     In its opening brief on appeal, Quaid states it produced the class list *after* it filed its petition to compel arbitration.

11

motion for class certification, and insisted Cohn's email to Hyslop, and Hyslop's response, constituted a demand and refusal to arbitrate.

Quaid also argued, among other things, that it alleged in its answer that it asserted all affirmative defenses, which would necessarily include its arbitration defenses, against each class member in the event a class was certified. Finally, it argued that its cross-complaint did not create a possibility of conflicting rulings because "each class member's rights and claims arise from entirely separate and distinct purchases from . . . [Quaid]."

D.     *The Trial Court's Minute Order Denying the Petition*

The trial court heard Quaid's petition to compel arbitration on October 4, 2021. At the start of the hearing, the trial court stated it did not believe the arbitration provisions in the GAP addenda applied to the class claims. The court also stated it was "troubl[ed]" that the arbitration provisions in the sales contracts stated the parties " 'may elect' " to arbitrate their disputes.

After listening to the arguments of counsel, the court took the matter under submission. Quaid's counsel did not request a statement of decision before or during the hearing.

That same day, on October 4, 2021, the trial court issued a minute order denying Quaid's petition. The order simply stated, "[Quaid's] Motion to Compel Arbitration and Stay Proceedings is denied."

E.     *Quaid Files an Ex Parte Application for Extension of Time to Request a Statement of Decision*

On October 18, 2021, Quaid filed an ex parte application for an order extending the time for requesting a statement of decision. Quaid stated it wanted to request a statement of decision to address "the principal controverted factual issues determined by the court," including: "[w]hether compliance with the [section 1281.2] demand requirement by Quaid and refusal by Class Counsel was found"; "[w]hether the possibility of inconsistent

12

rulings on common questions under [section 1281.2, subdivision (c)] was found"; "[w]hether waiver of the right to arbitrate the dispute by Quaid . . . was found"; and "[w]hether each form of sales contract identified in the Petition entered into between Quaid and the Class Members contains a valid, binding arbitration agreement." Quaid argued it would be irreparably harmed if it was not granted an extension of time to request a statement of decision because "[t]he absence of factual detail in the Minute Order may result in the Appeals Court making implied factual findings."

On October 19, 2021, the trial court denied the ex parte application. Quaid then filed a notice of appeal of the October 4 minute order denying its petition to compel arbitration.[8]

## DISCUSSION

### I.

*We Deny Quaid's Motion to Take Additional Evidence on Appeal*

On May 4, 2022, while this appeal was pending, Quaid filed a motion requesting this court to take additional evidence in support of its appeal pursuant to section 909[9] and California Rules of Court, rule 8.252(c). The

---

[8] "The denial of a motion to compel arbitration is an appealable order." (*Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, 176.)

[9] Section 909 provides: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. . . . The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without

13

additional evidence Quaid asks this court to accept is the declaration of its attorney, Halbert B. Rasmussen.

In the declaration, Rasmussen states that following the denial of Quaid's petition to compel arbitration, he obtained Quaid's "customer deal files for the class period, [and] reviewed a total of 1,210 . . . files for multiple forms of sale contracts which contain arbitration provisions." Rasmussen avers that whereas the Davis declaration filed in support of Quaid's petition to compel arbitration "reported the approximate number of class members whose sale contract documents with Quaid included an arbitration provision, as 560," "[t]he updated and corrected count of class members whose sale contracts contain arbitration provisions as of the filing of this motion, is 270 (Two Hundred Seventy). Of these, 194 sale contracts contain arbitration provisions in the contract (1 RISC w/ARB and 193 VSC w/ARB), and an additional 76 sale contracts have arbitration provisions incorporated through addenda (32 RISC w/GAP and 44 MPA w/GAP)."

Quaid argues we should accept the Rasmussen declaration because it is relevant to our determination whether certain class members should be compelled to arbitrate their disputes. It argues the declaration qualifies as new evidence because the "updated and corrected count" of class members assertedly bound by arbitration provisions was not known to Quaid before the trial court ruled on its petition. Hill opposes the motion.

We previously deferred ruling on Quaid's motion pending consideration of the merits of its appeal. We now deny the motion. Although section 909 permits an appellate court to take additional evidence for the purpose of making independent factual findings, this authority " 'is to be used sparingly

---

further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

14

and has been narrowly construed.' " (*In re L.B.* (2003) 110 Cal.App.4th 1420, 1423, fn. 1.)  "*Absent exceptional circumstances, no such findings should be made.*" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)  Quaid does not attempt to establish, nor do we find, that this case presents such an exceptional circumstance.

Also, " '[d]ecisions limiting the use of this power [to take new evidence] involved attempts to introduce on appeal evidence which . . . existed at the time of trial[.]' " (*In re L.B., supra,* 110 Cal.App.4th at p. 1423, fn. 1.)  This reason for declining to accept new evidence on appeal applies here. Rasmussen's "updated and corrected count" of class members is based on Quaid's customer deal files.  Quaid fails to explain why information derived from its own files was not available to it prior to the court's ruling.  Also, we agree with Hill that Rasmussen's averments about the count of class members bound by arbitration provisions are not admissible evidence:  they lack foundation and are impermissible legal conclusions.  (See *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 49–50 [declaration of counsel not admissible evidence where it failed to explain the basis for counsel's knowledge and referred to documents counsel failed to authenticate]; *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178 [expert witness may not opine on a question of law].)

## II.

*Quaid Has Forfeited Challenges to Dispositive, Factually Disputed Issues the Trial Court Impliedly Resolved Against It*

Quaid claims the trial court erred by denying its petition to compel arbitration.  However, the manner in which Quaid presents its challenges to the court's ruling is problematic.  Despite previously expressing concern in its

ex parte application to the trial court that its failure to request a statement of decision might result in an appellate court making implied findings on controverted factual issues, Quaid makes no mention of the doctrine of implied findings in its opening brief on appeal.

Instead, Quaid provides a limited summary of the proceedings below. It describes at length the arbitration provisions in the various types of contracts underlying its petition to compel arbitration. Although it acknowledges that Hill opposed its petition, it provides no description of the legal grounds for her opposition, or her opposing evidence. Quaid perfunctorily asserts that our review of the denial of a petition to arbitrate is de novo, and then proceeds to make a number of points apparently aimed at establishing the merits of its petition in the first instance. Quaid's arguments, as described in the headings of its opening brief on appeal, include: "Quaid [s]ufficiently [d]emanded [t]o [a]rbitrate [c]laims," "Quaid [a]sserted [i]ts [r]ight [t]o [a]rbitrate [p]recluding [w]aiver," and "[e]ach [s]eparate [c]lass [m]ember [c]ontract [p]recludes [p]ossibility of [c]onflicting [r]ulings." But having failed to acknowledge that Hill disputed whether it proved a prior demand for arbitration, and having also failed to acknowledge that waiver and the possibility of conflicting rulings were defenses to arbitration asserted by Hill, Quaid's arguments lack context and seem to be asserted in a vacuum, making it difficult to understand precisely how each point establishes reversible error.

In response, Hill contends Quaid's briefing is deficient, resulting in forfeiture of several issues. Specifically, Hill contends Quaid has failed to acknowledge the effect of its failure to request a statement of decision, and has misidentified the pertinent standard of review. Hill argues Quaid's petition presented at least two factually disputed issues that required

16

resolution by the trial court—whether Quaid proved the existence of a prior demand and refusal to arbitrate, and whether Quaid waived arbitration by taking actions inconsistent with a right to arbitrate.  Hill contends that since Quaid neglected to request a statement of decision, the doctrine of implied findings applies, requiring us to presume the court resolved these issues against Quaid.  Hill further contends that review of these issues is for substantial evidence, not de novo as asserted by Quaid.[10]

We agree with Hill that Quaid has forfeited its challenge to the trial court's implied findings by relying on the wrong standard of review and failing to acknowledge evidence unfavorable to its position.

"Sections 1281.2 and 1290.2[11] create a summary proceeding for resolving petitions to compel arbitration." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842.)  The party petitioning for arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement.  (*Engalla v. Permanente Medical Group, Inc.*

---

[10]    Hill also contends that whether arbitration should be denied under section 1281.2, subdivision (c), based on the possibility that arbitration would result in conflicting rulings on a common issue of law or fact, is left to the trial court's discretion.  Hill argues we must presume the court exercised its discretion in a manner consistent with its ruling.  She contends review of this implied determination is for an abuse of discretion, not de novo as asserted by Quaid, and that Quaid has therefore forfeited its appellate challenge to Hill's defense to arbitration under section 1281.2, subdivision (c).  Because we decide Quaid has forfeited its appellate challenges to two other dispositive issues, it is unnecessary for us to consider whether it also forfeited its challenge to this defense.

[11]    "A petition under this title shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions, except that not less than 10 days' notice of the date set for the hearing on the petition shall be given."  (§ 1290.2.)

(1997) 15 Cal.4th 951, 972 (*Engalla*).)  The petitioning party must also prove a prior demand and refusal to arbitrate under the agreement.  (*Mansouri v. Superior Court* (2010) 181 Cal.App.4th 633, 640 (*Mansouri*).)  The party opposing arbitration bears the burden of proving any defense to arbitration.  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; see *ibid.* [listing waiver and revocation (§ 1281.2, subds. (a), (b)) as statutory defenses to arbitration].)  "The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination."  (*Ruiz*, at p. 842.)  The trial court is required to resolve factual disputes raised by the parties' submissions when ruling on the petition.  (*Rosenthal*, at p. 414; *Engalla*, at p. 973.)

Statements of decision are available upon request in connection with a trial court's ruling on a petition to compel arbitration.  A statement of decision explains the factual and legal basis for the trial court's resolution of the principal controverted issues for which the statement of decision was requested.  (§ 632.)  Under section 1291, which appears within title 9 governing arbitration, "A statement of decision shall be made by the court, if requested pursuant to [s]ection 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title."  Under section 632, when "the trial is concluded within one calendar day . . . the request [for statement of decision] must be made *prior to* the submission of the matter for decision."  (Italics added.)

"[A] petition to compel arbitration is ' " 'in essence a suit in equity to compel specific performance of a contract.' " ' "  (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 688.)  "Unlike most motions, it provides a final determination of certain factual issues—such as whether the right to

18

arbitrate was waived—and results in an appealable order.  Moreover, in ruling on the petition when factual matters are in dispute, the court must weigh credibility and the strength of competing evidence.  [Citation.]  As such, a hearing on a petition to compel arbitration has attributes of a trial that suggest the need for a statement of decision to enable meaningful appellate review." (*Ibid*.)

Here, Quaid failed to request a statement of decision within the time frame mandated by section 632.  " 'A party's failure to request a statement of decision when one is available has two consequences.  First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision.  Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence.' " (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237, quoting *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)  Stated another way, under the doctrine of implied findings, "the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 (*Shaw*).)  This doctrine " ' "is a natural and logical corollary to three fundamental principles of appellate review:  (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." ' " (*Carbajal*, at p. 237; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

In its opening brief on appeal, Quaid did not acknowledge the effect of its failure to request a statement of decision, that such an omission results in application of the doctrine of implied findings on appeal, and that our review

19

of any implied factual findings is for substantial evidence. Instead, it asserted, without explanation, that a de novo standard of review applies to the denial of a petition to arbitrate. Quaid's articulation of a single, de novo standard of review is incorrect. To the contrary, " ' "[t]here is no uniform standard of review for evaluating an order denying a motion to compel arbitration." ' " (*Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408, 413, quoting *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) " ' "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." ' " (*Ibid.*)

As Hill correctly contends, Quaid's petition to compel arbitration presented at least two critical factual disputes that the trial court was required to resolve. First, relying primarily on the declarations of Cohn and Hyslop, the parties disputed whether Quaid proved a prior demand and refusal to arbitrate. Cohn and Hyslop offered conflicting accounts as to whether Cohn, or any other attorney representing Quaid, had ever demanded arbitration with unnamed class members purportedly bound by arbitration agreements. They also disputed whether Hyslop did refuse or was in a position to refuse arbitration by those individuals. They submitted conflicting evidence on this point, creating a factual dispute for the trial court's resolution. (See *Mansouri, supra*, 181 Cal.App.4th at p. 642 [party seeking to compel contractual arbitration must prove demand and refusal to perform under the arbitration agreement as a requirement for obtaining specific performance of the agreement]; *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277 [determination whether there has been a breach of a

20

contractual obligation is generally a question of fact].)[12]  Second, the parties disputed whether Quaid's affirmative defenses and written discovery responses were inconsistent with assertion of the right to arbitrate, resulting in waiver of arbitration.  Waiver, too, is generally an issue of fact.  (See *Engalla*, *supra*, 15 Cal.4th at p. 983 [" ' "Whether there has been a waiver of a right to arbitrate is ordinarily a question of fact[.]" ' "].)

Because the doctrine of implied findings applies, we presume the trial court decided (1) Quaid's petition was not preceded by a demand and refusal of arbitration, and (2) Quaid waived the right to compel arbitration.  Accordingly, the only question on appeal with regard to these implied findings is whether they were supported by substantial evidence.  (See *Shaw*, *supra*, 170 Cal.App.4th at p. 267 [when an appellate court applies the doctrine of implied findings, "the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence"].)

---

[12]    Quaid cites *Hyundai Amco America, Inc. v. S3H, Inc.* (2014) 232 Cal.App.4th 572 (*Hyundai*), a case we later discuss in more detail, as authority for the proposition that a unitary de novo standard of review applies to denial of a petition to compel arbitration.  However, *Hyundai* involved a discrete issue relating to whether the plaintiff's complaint for breach of a contract containing an arbitration provision demonstrated refusal of arbitration.  We read *Hyundai* as adopting a de novo standard of review because the evidence was not in conflict and the facts before it supported only one inference, namely, that plaintiff elected to litigate its dispute despite knowledge of its obligation to arbitrate, and in this manner clearly signaled its refusal to arbitrate.  The *Hyundai* court did not consider the scenario we have here, in which the parties' evidence conflicts and supports divergent inferences.  A case is not authority for a proposition it does not consider. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.)

Rather than confront these issues head on, Quaid's opening brief effectively attempts to sidestep them. It fails to acknowledge the doctrine of implied findings applies to its appeal, asserts an incorrect de novo standard of review, and fails to identify or tailor its arguments to a substantial evidence standard of review. We agree with Hill that Quaid has forfeited its appellate challenges to the factually disputed issues of demand and refusal to arbitrate, and waiver of the right to arbitrate, due to its deficient briefing. " ' "Arguments should be tailored according to the applicable standard of appellate review." [Citation.] Failure to acknowledge the proper scope of review is a concession of a lack of merit.' " (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.)

Quaid's challenges to these issues are further forfeited due to other briefing deficiencies in its opening brief on appeal. More specifically, as we have mentioned, Quaid fails to provide an adequate summary of the relevant facts and procedural background, including the grounds for Hill's opposition to its petition or the evidence submitted in opposition. When arguing its points, it ignores facts and evidence unfavorable to its position (e.g., its factually devoid written discovery responses about the bases for its arbitration defenses; Hyslop's averment that when he received Cohn's August 24, 2021 email, he did not know the identity of class members purportedly bound by arbitration provisions and could not make inquiry or refuse arbitration on behalf of such individuals). (See *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [party that presented a "one-sided version of the facts" "failed in his obligations concerning the discussion and analysis of a substantial evidence issue," resulting in forfeiture of the issue]; *Foreman & Clark Corp. v. Fallon* (1971) 3

Cal.3d 875, 881 [failure to identify all evidence relevant to a point forfeits the issue].)

In its reply brief on appeal, Quaid acknowledges the doctrine of implied findings for the first time, and attempts to argue the doctrine does not apply to its appeal. It makes this confusing assertion: "Quaid's arguments are not premised on a legitimate factual challenge to the trial court's ruling but are limited to issues of undisputed fact that refutes an issue in the absence of substantial evidence. None of Quaid's arguments are premised on a legitimate factual challenge to the trial court's ruling. Therefore, the doctrine of implied findings does not apply." In essence, Quaid seeks to recast every issue presented by its petition as an issue resting on undisputed facts, making the trial court's resolution of each issue a question of law subject to de novo review. (See *Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 312 ["the doctrine of implied findings does not apply to the court's legal conclusions (which are reviewed de novo on appeal)"].)

We reject these reply brief contentions, for two reasons. First, they are forfeited because they were raised for the first time in reply without a showing of good cause. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765 [" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' "]; accord, *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2.) Having previously told the trial court that its appeal stood to be affected by the doctrine of implied findings, Quaid has no excuse for neglecting to address the doctrine, and any grounds for avoiding the doctrine, in its opening brief on appeal. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171,

181 [" 'It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.' "].)

Second, Quaid's reply brief contentions are unpersuasive. In a strained effort to characterize the existence of a demand to arbitrate as resting on uncontroverted facts, it asserts that "evidence of the content of [Cohn's] email to class counsel is undisputed." Therefore, Quaid contends, whether the email amounted to a demand to arbitrate is a question of law. However, that the content of the email was not controverted does not lead inexorably to this conclusion. A fact can be characterized as undisputed if " 'only one inference may reasonably be drawn.' " (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196; see *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 913 ["[I]t is settled that when conflicting inferences may be drawn from undisputed facts, the reviewing court must accept the inference drawn by the trier of fact so long as it is reasonable."]; *Bustos v. Global P.E.T., Inc.* (2017) 19 Cal.App.5th 558, 563 [" '[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court.' "].) That is not the case with Cohn's email.

The parties offered differing interpretations of the email's text and submitted conflicting extrinsic evidence in support of their competing interpretations. Cohn averred the email was a request to stipulate to arbitration. Quaid emphasized that her email threatened a motion to compel arbitration. Hyslop averred he understood Cohn's email as yet another defense request to reduce the class, and that he intended his response to serve as a denial of that request. He further averred that when Cohn sent the email, the class list had not yet been produced by Quaid; Cohn failed to

24

identify the class members Quaid claimed were bound by arbitration provisions; his firm did not have an engagement agreement with any of these individuals; and he did not otherwise know who these individuals were. Hill argued Cohn's email was therefore not a proper demand for arbitration. In reply, Quaid disputed whether Hyslop lacked the ability or obligation to contact unnamed class members who signed arbitration agreements to ascertain their willingness to arbitrate, and submitted additional evidence in support of these positions. Thus, more than one reasonable inference could be drawn from Cohn's words, and the extrinsic evidence offered to explain their meaning was conflicting. Even if the email's text was not factually disputed, its interpretation and effect as an adequate demand for arbitration was.[13]

Similarly, the parties vigorously disputed whether Quaid's affirmative defenses in its answer to the complaint, and its written discovery responses in which it denied knowledge of evidence supporting its arbitration defenses and otherwise failed to disclose that unnamed class members had signed arbitration agreements, were inconsistent with the assertion of a right to arbitrate the claims of unnamed class members, resulting in waiver (§ 1281.2, subd. (a)). In its reply brief, despite professing that our review of all issues raised by its appeal is de novo, Quaid implicitly concedes waiver is

---

[13] Quaid cites *HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100 for the proposition that a de novo standard of review applies when the content of correspondence demanding arbitration is not in dispute. *HM DG* is distinguishable. In *HM DG*, the correspondence "state[d], *in no uncertain terms*: 'Please accept this letter as defendants' demand that all of the claims raised by plaintiffs in their complaint . . . , be arbitrated[.]" (*Id.* at p. 1112, italics added.) Here, the content of Cohn's email to Hyslop, and the circumstances under which it was sent, created uncertainty with regard to whether it demanded arbitration.

25

a factual determination subject to substantial evidence review: it asserts that "not a scintilla of evidence exists to support the trial court's [implied] finding of waiver."

In short, the trial court impliedly found that Quaid's petition to compel arbitration was not preceded by a demand and refusal to arbitrate by class members purportedly bound by arbitration provisions, and that Quaid waived the right to compel arbitration through conduct inconsistent with assertion of a right to arbitrate. These implied factual findings are subject to substantial evidence review, for the reasons we have already discussed. Quaid fails to establish otherwise. For the reasons we have discussed, Quaid has forfeited its challenges to these findings on appeal. Either of these issues, on its own, would support affirmance of the court's denial of Quaid's petition. (See § 1281.2 & *id.* subd. (a).) As a result, our finding of forfeiture compels affirmance of the court's ruling.

## III.

*Because Quaid Does Not Establish That the Trial Court Erred in Impliedly Finding It Failed to Prove the Existence of a Prior Demand and Refusal to Arbitrate, Quaid's Appeal Fails on the Merits*

Even if we were to overlook Quaid's forfeiture and reach the merits of its appeal, the result would be no different. We are required to uphold the trial court's ruling if it was correct on any ground. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.) Here, even if Quaid had not forfeited its challenges to the foregoing issues, we would uphold the court's ruling on the ground it did not err in impliedly finding Quaid's petition was not preceded by a demand and refusal to arbitrate.

Section 1281.2 expressly requires the petitioning party to establish "the existence of a written agreement to arbitrate a controversy and that a party

26

to the agreement refuses to arbitrate that controversy." In *Mansouri*, *supra*, 181 Cal.App.4th at page 641, the Court of Appeal construed this language to require proof of "(1) the parties' written agreement to arbitrate a controversy [citation]; (2) a request or demand by one party to the other party or parties for arbitration of such controversy pursuant to and under the terms of their written arbitration agreement; and (3) the refusal of the other party or parties to arbitrate such controversy pursuant to and under the terms of their written arbitration agreement." (Italics omitted.) The court went on to determine the petitioning party had failed to prove a prior demand and refusal to arbitrate, because its correspondence demanded arbitration in terms that varied from the terms in the operative arbitration agreement, and the response therefore could not be construed as an " 'unequivocal intent . . . to reject any form of binding arbitration.' " (*Id.* at pp. 637, 642.)

Here, Quaid identifies three circumstances that it claims met the threshold requirement of a prior demand and refusal to arbitrate. First, relying on *Hyundai*, *supra*, 232 Cal.App.4th 572, it argues "Plaintiff's lawsuit filed against Quaid is sufficient refusal to arbitrate." In *Hyundai*, the plaintiff, a general contractor, sued a subcontractor for breaching a services agreement providing that disputes would be subject to arbitration. (*Id.* at p. 574.) The trial court denied the subcontractor's motion to compel arbitration on the ground the subcontractor failed to establish it demanded arbitration, and the general contractor refused. (*Ibid.*)

The Fourth Appellate District, Division Three, reversed. It concluded that "[a]rbitration can be refused without a formal demand ever having been made" and that the general contractor's "filing of a lawsuit rather than commencing arbitration proceedings as required by the agreement affirmatively establishes [its] refusal to arbitrate the controversy." (*Hyundai*,

27

*supra*, 232 Cal.App.4th at p. 577.) The court stated it did not disagree with the analysis of *Mansouri*, but distinguished *Mansouri* as a case in which "the demand for arbitration did not match the terms of the parties' arbitration agreement." (*Hyundai*, at p. 577.) The *Hyundai* court emphasized it was holding "only that [the general contractor's] lawsuit against [the subcontractor] for a controversy clearly related to the parties' performance under the agreement sufficed to show [the general contractor's] refusal to arbitrate the controversy." (*Id.* at pp. 577–578.)

While Quaid tries to bring this case within the holding of *Hyundai*, its effort fails. Unlike *Hyundai*, the unnamed class members Quaid sought to compel to arbitration did not "fil[e] a lawsuit." (*Hyundai, supra*, 232 Cal.App.4th at p. 577.) The lawsuit was filed by Hill, and Quaid conceded Hill was not required to arbitrate her claims. At the time Quaid filed its petition, unnamed class members had not received class notice. Unlike *Hyundai*, nothing about the procedural posture of this case supports the inference the class members purportedly bound by arbitration agreements were even aware of the lawsuit's existence, much less that they were unwilling to arbitrate any disputes covered by arbitration agreements. Accordingly, *Hyundai* does not support Quaid.

Second, Quaid claims its opposition to the motion for class certification, in which it argued the class should be reduced to exclude putative members bound by arbitration provisions, constituted a demand for arbitration. We disagree. Quaid's opposition brief arguments sought to reduce the size of the class and did not expressly request arbitration. Moreover, its opposition arguments preceded class certification. Prior to certification, unnamed class members are not considered parties to the action (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 273) and are not deemed represented by

28

plaintiff's counsel (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 736). Even if its opposition brief arguments could somehow be construed as a request for arbitration—and they cannot—they were not impliedly communicated to the unnamed class members, who were not yet part of the action or represented by the attorney who received and responded to the arguments. Thus, the parties' arguments for and against class certification did not satisfy Quaid's burden to establish a prior demand and refusal to arbitrate on behalf of unnamed class members.

Third, Quaid argues Cohn's August 24, 2021 email to Hyslop, and Hyslop's response, constituted a demand that unnamed class members bound by arbitration provisions arbitrate their disputes, and a refusal to arbitrate by those same class members. Again, we disagree. Cohn's email asked Hyslop if he was "willing to amend the class definition and/or to otherwise exclude those class members who signed arbitration agreements when they purchased their motorcycles." This language is susceptible of the construction impliedly adopted by the trial court: that Quaid was making yet another request to reduce the size of the class. Quaid emphasizes that Cohn's next sentence stated, " '***If not, we will be filing a motion to compel arbitration against those class members***.' " However, this consequence was the threatened result if Hyslop refused the demand she just expressed, i.e., her demand to limit the composition of the class. Neither this sentence nor any other part of the email clearly conveyed a request to initiate arbitration with the unnamed class members bound by arbitration provisions. Thus, Hyslop's refusal cannot be construed as an " 'unequivocal intent . . . to reject any form of binding arbitration.' " (*Mansouri, supra*, 181 Cal.App.4th at pp. 637, 642.)

29

Moreover, we agree with Hill that because Quaid had not yet produced the class list when Cohn sent the email, and Cohn's email did not identify the class members who were required to arbitrate their disputes, Hyslop had no means of contacting these class members to ascertain their willingness to arbitrate. Even assuming arbitration was a class issue such that he had the duty to communicate with unnamed class members about Cohn's demand, he lacked the ability to do so. So his response, "[n]o thanks," could not reasonably be deemed a refusal to arbitrate by any particular class member so as to support compelling that class member to arbitration.[14]

Therefore, substantial evidence supported the trial court's implied determination that Quaid's petition was not preceded by a demand and refusal to arbitrate. It did not err in denying the petition.[15]

---

[14]    In reply, Quaid asserts for the first time that its petition to compel arbitration was itself a demand to arbitrate. The point is specious. Proof of a demand for arbitration and refusal to arbitrate "is a necessary prerequisite to a petition to compel arbitration under section 1281.2." (*Mansouri*, *supra*, 181 Cal.App.4th at p. 640.) This means the demand and refusal must precede the petition; if the petition operated as the demand, it would moot the requirement to present proof of a demand for arbitration.

[15]    Because our resolution of this point and our earlier determination that Quaid forfeited two of its challenges are sufficient to dispose of this appeal, we need not and do not address the additional arguments in favor of and against reversal raised in Quaid and Hill's appellate briefs.

DISPOSITION

The order denying Quaid's petition to compel arbitration is affirmed. Hill shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

31